UNITED STATES DISTRICT

FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Securities Intermediary; and NATHAN KAHAN, as Trustee of The Klugman Trust, Dated May 2, 2007,<br>　　　　　　　　　　　Plaintiffs,<br><br>　　　　-against-<br><br>LINCOLN BENEFIT LIFE COMPANY,<br><br>　　　　　　　　　　　Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

　　　　Plaintiffs Wells Fargo Bank, N.A., as Securities Intermediary ("Wells Fargo") by and through its counsel, Arent Fox LLP, and Nathan Kahan, as Trustee of The Klugman Trust, Dated May 2, 2007 (the "Trustee" and, collectively with Wells Fargo, the "Plaintiffs") by and through its counsel, Paneth & O'Mahony PLLC, for their Complaint against defendant Lincoln Benefit Life Company ("LBL" or "Defendant"), allege as follows:

### INTRODUCTION

　　　　1.　　This is an action for breach of contract with respect to a life insurance policy (the " Klugman Policy") issued by the Defendant, LBL, on the life of Ruth Klugman (the "Insured") who died on January 20, 2017. Wells Fargo is the owner of record of the Klugman Policy, and Wells Fargo and The Klugman Trust Dated May 2, 2007 (the "Trust") are co-beneficiaries of the Klugman Policy. They timely presented a claim for life insurance proceeds on forms provided by LBL, but LBL has failed to pay or deny the claim.

　　　　2.　　Plaintiffs have been forced to commence this action because LBL, rather than pay the claim as required by contract, first delayed action and then, without warning, filed an action in a jurisdiction – federal court in the State of New Jersey – where there is no personal jurisdiction over the Plaintiffs, seeking a declaration of rights but failing to either state that the

claim has been denied or allege any facts that might justify their failure to pay. Because LBL's suit in New Jersey was improperly filed and is subject to dismissal, Plaintiffs have been forced to file this action to recover that to which they are legally entitled -- policy benefits from LBL.

3. LBL's refusal to pay the Klugman Policy's death benefit, and its determination instead to file suit and demand that it be allowed to retain all the premiums it has collected, is part of a pattern and practice in which LBL has recently engaged to systematically avoid its contractual obligations, and to require the owners and beneficiaries of its policies, such as the Plaintiffs, to expend significant resources to compel LBL to honor its contracts. Through its pattern and practice, LBL, which is no longer an issuing carrier but is merely an investment vehicle, induced Wells Fargo and other beneficiaries of valid life insurance policies to pay LBL millions of dollars in premium on policies that the current investor-owners of LBL determined, somewhere along the line, would be challenged in court.

4. Seeking a favorable jurisdiction for its untenable position, LBL typically files suit in New Jersey, claiming to have issued policies there to residents of New York who dealt with New York-based agents that LBL had contracted with to sell its policies. LBL has not sought to be licensed to sell insurance in New York, presumably due to stringent regulatory guidelines mandated by the New York Department of Financial Services ("DFS"), and it must not be permitted to shirk its obligations to Wells Fargo, the Trustee, the Trust and others who purchased policies from LBL in the State of New York.

5. This pattern and practice of LBL has been the subject of testimony before this Court in previous litigation. *See AEI Life, LLC v. Lincoln Benefit Life Co.,* No. 14-cv-6449 (E.D.N.Y.). Testimony presented by a corporate representative of LBL under oath, demonstrates that LBL consciously allowed agents it had appointed to solicit and sell its insurance policies in

the state of New York for a number of years, a repeated and ongoing pattern and practice. *See AEI Life, LLC v. Lincoln Benefit Life Co.,* No. 14-cv-6449, D.E. 109 at 306:7 – 314:9 (E.D.N.Y. Sept. 23, 2016); *see also* attached Exhibit ("Exh,") H at 32 - 40.

6. The misconduct of LBL with respect to the Klugman Policy and other similar policies (collectively with the Klugman Policy, the "Policies"), dates back to the initiation of the Policies, when the Policies were issued through solicitation, negotiation and delivery of the Policies in the State of New York – notwithstanding the fact that LBL is not licensed to issue insurance in New York.

7. LBL's conduct is also problematic because, after issuing the Policies, LBL did not investigate the Policies and/or seek to challenge their validity for any reason during the initial two years that the Policies were in-force when they were subject to being contested. Each Policy precluded LBL from contesting the policy for any reason after two years, a provision mandated by law. In its opinion in *New England Mut. Life Ins. Co. v. Caruso,* 535 N.E.2d 270, 274 (1989), the New York Court of appeals has made clear that this kind of untimely challenge is prohibited "because a change in the rule [barring an insurance carrier from contesting the validity of a policy for any reason after expiration of the applicable contestability period] would result in a forfeiture to defendant and an unnecessary advantage to plaintiff."

8. Indeed, the reasoning of the Court of Appeals in *Caruso* is compelling when viewed in the context of LBL's now well-worn playbook. Rather than raising any concerns during the first two years of the policy, LBL instead verifies to the policy owner that coverage is in place (*see* attached Exhs. D and E) and accepts premium on the Policies for months and years thereafter – a course of conduct calculated to falsely assure policyowners that LBL would fully abide by its contractual obligations to honor these policies and pay the death benefits of these

policies upon the death of the subject insureds.

9. When the time comes to pay the policy, however, LBL refuses. Instead, pursuant to its strategy, LBL files lawsuits, or asserts counterclaims, in which it seeks to challenge the validity of the Policies from the time of their inception while also requesting that it be permitted to retain all of the premium it has collected on the Policies over many years between issuance of the policy and the death of the insured.

10. Knowing that no New York court would allow it to raise such a challenge, LBL has, on all but one occasion, forum-shopped and brought suit in federal court in New Jersey even though the subject insured is a New York resident and each Policy was solicited, negotiated, sold and delivered in New York.

11. The owners, and in some cases beneficiaries, of the Policies have been forced to expend significant resources defending against LBL's two-pronged attack on their respective policy, in which LBL, as noted above, not only seeks to have the policy declared void *ab initio,* but also seeks to be permitted to retain all of the premium it has collected on the policy during all the years that it sat on its rights and took no action to challenge the policy.

12. During some of the litigation over the validity of the Policies, LBL has claimed that the Policies are governed by New Jersey law, as opposed to New York. As has been revealed in such litigation, however, LBL has failed to ensure that, through its appointed agents, LBL does not actually sell policies in New York.

13. The within litigation is a prime example of LBL's problematic and deceitful business practice. LBL issued the Klugman Policy on the life of a New York resident, the Insured, in 2007. The Klugman Policy was issued to the Trust, which was created under New York law in New York and named as beneficiary the Insured's daughter, also a New York

4

resident.

14. In 2010, more than two years after the Klugman Policy was issued, title to the Klugman Policy was transferred to Wells Fargo through a life settlement conducted in, and subject to, the Insurance Laws of the State of New York. Life settlement transactions are legal in the state of New York and elsewhere and provide policy owners who no longer wish to retain their policies with an option to monetize the policy, rather than just letting the policy lapse without any compensation for premiums previously paid. As part of the transfer here, Wells Fargo became the owner and a beneficiary of the Klugman Policy, along with the Trust.

15. LBL was made aware of the transfer at the time (*see* attached Exh. C), but took no action to question the validity of the Klugman Policy. Wells Fargo, on behalf of its clients, then proceeded to pay almost $600,000 in premium for the Klugman Policy for approximately the next seven years, with LBL invoicing and accepting each premium payment without objection.

16. Between the Klugman Policy's issuance and the Insured's death in January 2017, LBL regularly represented in writing to Wells Fargo that the Klugman Policy was valid and in-force, and after title of the Klugman Policy was transferred to Wells Fargo, LBL repeatedly acknowledged Wells Fargo's status as the owner and a beneficiary of the Klugman Policy.

17. In keeping with its strategy to collect as much premium as possible prior to the Insured's death, LBL did not inform Plaintiffs that it considered the Klugman Policy invalid, or even that it had any suspicions about the Klugman Policy. While the Insured was alive, LBL made no effort whatsoever to rescind the Klugman Policy or otherwise have it declared void. Instead, LBL strategically waited ten years, until after the Insured's death, to refuse to honor the Klugman Policy, collecting premium year after year as the evidence faded and disappeared and the most important witness in any legitimate dispute, the Insured, passed away, all the while

5

knowing that it had no intention of ever paying the Klugman Policy's death benefit.

18. On January 20, 2017, the Insured passed away, and Wells Fargo put in a claim for payment of the Klugman Policy's death benefit (the "Death Claim"). *See* attached Exh. F. Upon receiving the Death Claim, LBL did not honor its obligations under the Klugman Policy and pay the death benefit to Wells Fargo and the Trustee, on behalf of the Trust; in fact it did not formally respond to the Death Claim. Rather, after advising the servicing agent for Plaintiffs that checks were being prepared for them, LBL instead commenced suit in the United States District Court for the District of New Jersey -- a cherry-picked forum in which LBL cannot obtain personal jurisdiction over Wells Fargo, the Trustee or the Trust and that lacks the necessary connections to this dispute that are present here in New York -- to have the Klugman Policy declared void *ab initio* for lack of insurable interest.

19. In support of its bad-faith and tactical claims in New Jersey, LBL has alleged there that the Klugman Policy may have been created in connection with a so-called Stranger Originated Life Insurance ("STOLI") scheme and that "[i]t appears that the [Klugman] Policy was procured for the benefit of and financed by a stranger to Ms. Klugman." LBL, however, has asserted no facts other than facts that appear on the face of the 2007 insurance application forms or that were disclosed when the life settlement transaction was effected. LBL has asserted that these facts – which LBL has known for many years – somehow now allow it to use discovery to fish for evidence of STOLI despite the policy provision precluding LBL from contesting the Klugman Policy.

20. Unless LBL's bad faith strategy is checked, its scheme will continue in effect for the many policies on its books similar to the Klugman Policy and the other Policies, many of which are owned by Wells Fargo and other bona fide purchasers and many of which are still

owned by the original owners. Accordingly, Plaintiffs bring this action seeking judgment that LBL is in breach of its contractual obligations under the Klugman Policy.

## THE PARTIES

21. Wells Fargo is the current owner and a beneficiary of the Klugman Policy. Wells Fargo is a national banking association organized and existing under federal law with its main office located in Sioux Falls, South Dakota, as identified in its Articles of Association. Wells Fargo maintains a principal place of business in California. Wells Fargo is not a citizen of Nebraska or New York for purposes of diversity jurisdiction.

22. The Trustee is the sole trustee of the Trust, which is a beneficiary of the Klugman Policy. The Trustee is an individual person who resides in New York, and the Trust is an irrevocable life insurance trust that resides in and has its situs in New York. Neither the Trustee nor any of the beneficiaries of the Trust is a citizen of or domiciled in California, Nebraska or South Dakota for purposes of diversity jurisdiction.

23. Upon information and belief, LBL is a life insurance company organized and existing under the laws of Nebraska, with its principal place of business in Nebraska. Upon information and belief, LBL is a citizen of Nebraska, or, in the alternative, is not a citizen of either California, New York or South Dakota for purposes of diversity jurisdiction.

## JURISDICTION, VENUE AND PRE-ANSWER SECURITY

24. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between Plaintiffs and LBL.

25. This Court has personal jurisdiction over LBL in this action pursuant to N.Y. Ins. Law § 1213(b)(1), specifically, because LBL: (i) issued and delivered the Klugman Policy to the

Trustee, a New York resident, as representative of the Trust, a New York Trust; (ii) solicited the sale of the Policy through its agent, Bernat Lefkowitz ("Lefkowitz"), the Insured and the Trustee in New York; and (iii) collected premium on the Policy from the Trust, a New York Trust. Such acts are equivalent to and constitute LBL's appointment of the superintendent, and her successors in office, to be its true and lawful attorney upon whom may be served all lawful process in this proceeding instituted by or on behalf of the beneficiaries of the Klugman Policy, the Plaintiffs, arising out of Klugman Policy.

26. Venue is proper in the Eastern District of New York pursuant 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs claims for relief occurred in the Eastern District of New York. The Klugman Policy was solicited and sold by Lefkowitz, primarily from his offices in Brooklyn, New York, and as part of the process for delivering the Klugman Policy to the Insured, LBL transmitted the Klugman Policy to Lefkowitz, either directly or through a general agent, at his offices in Brooklyn, New York, and Lefkowitz proceeded to deliver the Klugman Policy to the Insured in New York.

## FACTS

**A.     LBL's Course Of Conduct**

27. As noted, agents authorized to do business for LBL have sold insurance in the State of New York on numerous occasions. LBL has condoned this conduct, as an executive of LBL has admitted in this Court (*see AEI Life, LLC v. Lincoln Benefit Life Co.,* No. 14-cv-6449, D.E. 109 at 306:7 – 314:9 (E.D.N.Y. Sept. 23, 2016); *see also* attached Exh. H at 32-40) by appointing insurance agents who were located in New York, including Lefkowitz, as agents to sell the LBL product, even though LBL could not lawfully issue insurance in the State of New York. LBL knew that these New York-based agents were prohibited to solicit, sell, negotiate or

8

deliver its policies in New York, but it failed to take any steps to direct the agents on how to avoid transacting business in New York, instead condoning their unauthorized acts in the state by willfully ignoring blatant violations of law by those agents. *Id.*

28. In 2013, LBL, which had been owned by and was part of the Allstate Financial Group, was sold to an outside investment group with no interest in continuing to underwrite new life insurance policy sales. Resolution Life, the new owner, which collects premium and presumably pays claims, looks to profit not from selling insurance but from investments. *See AEI Life, LLC v. Lincoln Benefit Life Co.,* No. 14-cv-6449, D.E. 109 at 303 (E.D.N.Y. Sept. 23, 2016); *see also* attached Exh. H at 29. The sale from Allstate resulted in the A.M. Best quality rating of LBL being reduced from "A+" to "A-" with negative implication. *Id.*

29. Over the past five years, and primarily since its acquisition by the investment group, LBL has engaged in a course of conduct in which it has accepted premium without objection and then emerged from the proverbial weeds and sought to use the court system to help it avoid its contractual obligation to pay the almost $35 million in death benefit due under the Policies, which are described below, while at the same time keeping all premium that has been paid by legitimate owners that had no basis to believe the policies would not be honored. LBL did nothing to warn its existing policyholders that their life insurance coverage might not be honored as a result of this apparent litigation strategy. LBL did so in order to keep receiving the premium payments on such policies for the maximum amount of time, all the while knowing it had no intent to pay the death benefits when they came due. Four recent examples, including the Klugman Policy, are as follows:

    a. In March 2012, in response to a complaint to reinstate a $6 million life insurance policy issued on the life of Vera Kerpel (the "Kerpel Policy"), a

New York resident, LBL asserted a counterclaim requesting that the Kerpel Policy be declared void *ab initio* for lack of insurable interest because it was allegedly procured pursuant to a so-called STOLI scheme that purportedly involved, among others, Lefkowitz. *See The Kerpel Family Irrevocable Trust v. Lincoln Benefit Life Co.,* No. 12-cv-1048, D.E. 2 at 7-14 (E.D.N.Y. March 3, 2012). In that action, LBL challenged the validity of the Kerpel Policy approximately four and a half years after it was issued, in November 2007. *Id.*

b. In February 2013, LBL sought to challenge the validity of a $10 million life insurance policy insuring the life of Miriam Kaller (the "Kaller Policy"), a New York resident who had passed away in 2009, by filing an action in the United States District Court for the District of New Jersey. *See Lincoln Benefit Life Co. v. Kaller,* No. 13-cv-767, D.E. 1 (D.N.J. Feb. 6, 2013). In that action, LBL requested that the Kaller Policy be declared void *ab initio* for lack of insurable interest because it was allegedly procured pursuant to a so-called STOLI scheme that purportedly involved, among others, Lefkowitz. *Id.* LBL sought to challenge the Kaller Policy over five years after it was issued in December 2007. *Id.* Ultimately, the dispute over the Kaller Policy was reconstituted in New York Supreme Court for Kings County, which is still ongoing, and the court in that case recently denied a motion to dismiss filed by LBL. *See* attached Exh. I.

c. In July 2013, LBL sought to challenge the validity of two $6.65 million life insurance policies insuring the life Gabriela Fischer (the "Fischer

Policies"), a New York resident, by filing an action in the United States District Court for the District of New Jersey by claiming that the Fischer Policies were void *ab initio* for lack of insurable interest.  *See Lincoln Benefit Life Co. v. AEI Life, LLC, et al.,* No. 13-cv-4117, D.E. 1 (D.N.J. July 3, 2013).  LBL sought to challenge the Fischer Policies over five years after they were issued, in June 2008.  *Id.* at D.E. 1-1, 1-2.  Ultimately, LBL's New Jersey action over the Fischer Policies was dismissed/transferred to this Court, and when the dispute was before this Court, the court found that, with respect to one of Fischer Policies, LBL was barred from challenging the validity of the policy under New York law, and that equity and laches favored the policyowner due to LBL's delay in challenging the policy.  *See AEI Life, LLC v. Lincoln Benefit Life Co.,* No. 14-cv-6449, 2016 WL 7408835 (E.D.N.Y. Dec. 22, 2016).

d.  Finally, in this case, in April 2017, LBL filed an action in the United States District Court for the District of New Jersey to have the Klugman Policy declared void *ab initio* for lack of insurable interest because the Klugman Policy was allegedly procured pursuant to a so-called STOLI scheme purportedly involving Lefkowitz.  *See Lincoln Benefit Life Co. v. Wells Fargo Bank, N.A., et al.,* No. 17-cv-2905 (the "New Jersey Action"), D.E. 1 (D.N.J. Apr. 23, 2017).  In its Complaint in the New Jersey Action LBL specifically alleges that Lefkowitz "has been identified in litigation as a promoter of illegitimate STOLI schemes." *Id.* at 11.  LBL filed the New Jersey Action to challenge the validity of the Klugman Policy almost

ten years after issuing it and more than five years after alleging, in this Court, that Lefkowitz was a promoter of STOLI schemes. *Id.* As alleged more fully below, the Klugman Policy insured the life of a New York resident, and LBL brought suit after the Insured had passed away.

30. In all but one of the above-mentioned actions, LBL first brought suit to challenge the applicable policies in New Jersey. Upon information and belief, LBL did this to avoid the effect of New York law, which would bar LBL from challenging the validity of the applicable policies in each case. *See e.g., AEI Life, LLC,* 2016 WL 7408835, at *1.

31. Moreover, during the course of litigation involving one of the Fischer Policies, LBL's own corporate witness admitted that LBL, a company that is not licensed to transact insurance business in New York, performed no oversight and gave no instruction to its agents to ensure that its policies were solicited and delivered in New Jersey. It also accepted the medical portion of policy applications that were signed in New York, even though the policy wording of its contracts mandates the imposition of New York law when the application is signed there. The LBL witness essentially conceded that his company transacted business in New York in this fashion, without a license. *See AEI Life v. Lincoln Benefit Life Co.,* No. 14-cv-6449 D.E. 109 at 306:7 – 314:9 (E.D.N.Y. Sept. 23, 2016); *see also* attached Exh. H at 32-40.

**B.**     **The Klugman Policy**

32. On or about July 27, 2007 LBL issued the Klugman Policy, bearing policy number 01N1354626, and insuring the life of the Insured, Ruth Klugman, in the amount of $5,000,000. A complete copy of the Klugman Policy, as it was bound by LBL, is attached hereto as Exh. A. This bound policy is the complete contract between the parties.

12

33. The Insured was a resident of New York at the time the Klugman Policy was applied for and issued and remained at that residence through her lifetime. *Id.* at 34.

34. The two portions of the application for the Klugman Policy disclosed that the Insured was a 75 year-old woman seeking a $5 million life insurance policy and that the agent for the Klugman Policy was Lefkowitz (*Id.* at 34, 39), which are details that LBL now contends, in the New Jersey Action, are evidence of STOLI.

35. The Klugman Policy omitted to include Part II of the application, even though Part II is referenced. Medical Exam Part One, which is the first application document signed by the Insured, was executed in front of an LBL representative in March 2007 in New York. *See* Exh. A. at 43.

36. At the time the Klugman Policy was issued, the sole owner and beneficiary of the Klugman Policy was the Trust. *Id.* at 34.

37. At the time the Klugman Policy was issued, and all other relevant times, including the present, the Trust and the Trustee have resided and maintained its situs in New York. *See e.g.,* attached Exh. A at 8; Exh. B.

38. The Klugman Policy was issued for delivery to the Trustee at his New York address and was in fact delivered there. *See* attached Exh. A at 7.

39. The application for the Klugman Policy also indicated on its face the Klugman Policy's many New York connections, specifically, that the Klugman Policy would be issued on the life of a New York insured to a New York Trust as owner and beneficiary. *Id.* at 34.

40. The life insurance agent that placed the Klugman Policy was Lefkowitz who, according public records, has his office in Brooklyn, New York. *See* attached Exh. G. According to legal pleadings filed in the Court, LBL considered Lefkowitz to be a promoter of

13

"STOLI" policies as early as 2012. *See The Kerpel Family Irrevocable Trust v. Lincoln Benefit Life Co.,* No. 12-cv-1048, D.E. 2 at 10-12 (E.D.N.Y. March 3, 2012). As an appointed agent, Lefkowitz was responsible for the sale, solicitation and delivery of the Klugman Policy.

41. Public documents from the New York lawsuit involving one of the Fischer Policies that was before this Court, which involved another New York-based agent for LBL, established the custom and practice of LBL concerning its failure to limit the activities of its agents in New York and to allow policies to be solicited, negotiated and sold, and later delivered in New York by those agents to persons residing in New York. *See AEI Life, LLC v. Lincoln Benefit Life Co.,* No. 14-cv-6449, D.E. 109 at 164:10 – 165:1, 241:25 – 242:8 (E.D.N.Y. Sept. 23, 2016). Specifically, in that lawsuit LBL presented evidence that it does not prohibit its agents in New York from soliciting policies in New York and provides no guidance or limitation on their activities even though LBL is not licensed to have its products solicited or sold here. *Id.* at 306:7 – 314:9 (E.D.N.Y. Sept. 23, 2016); *see also* attached Exh. H at 32-40. Thus, since Lefkowitz's office is located in Brooklyn, New York (*see* attached Exh. G), upon information and belief, all of the acts that Lefkowitz performed in connection with the sale and solicitation of the Klugman Policy took place from his office in Brooklyn.

42. As such, the sale, solicitation and delivery of the Klugman Policy all likely took place in Brooklyn.

43. The Klugman Policy states that "[i]f the Insured dies while this certificate is in force, [LBL] will pay the death benefit when we have received due proof of death[.]" *See* attached Exh. A at 19.

44. The Klugman Policy also has an incontestable clause, which states, in relevant part that "[LBL] will not contest this certificate after it has been in force during the lifetime of

14

the insured for two years from the issue date" unless: there is an increase in the Klugman Policy's face amount; there is a reinstatement of the Klugman Policy or any rider thereto; or a rider attached to the Klugman Policy has a separate provision. *Id.* at 25.

45. The term "issue date" is defined in the Klugman Policy as "The date the certificate is issued, as listed on the Certificate Data pages. It is used to determine the certificate years and certificate months in the certificate." *Id.* at 18. The issue date of the Klugman Policy, as listed on the Certificate Data pages, is July 27, 2007. *Id.* at 6, 7, 8, 10.

**C.     Life Settlement Sale Of The Klugman Policy To Wells Fargo**

46. As alleged more fully below, Wells Fargo became the owner and a beneficiary of the Policy when the Policy was sold pursuant to N.Y. Ins. Law Art. 78 as a life settlement.

47. Many life insurance policies lapse without the insurer ever paying a death benefit. Secondary market life insurance transactions, frequently referred to as "life settlements," provide relief for policy owners who no longer wish to or cannot afford to retain their policies, but who do not want to lose their value. The purchaser offers to buy the policy for more than the owner would receive by lapsing the policy and surrendering it to the insurance company (i.e., the cash surrender value). The life settlement company's client -- known in New York Insurance Law as the financing entity -- then assumes the obligation to pay all future premium and expenses in exchange for the right to receive all or a portion of the death benefit upon the death of the insured.

48. Prior to the existence of the life settlement market, policyowners had an asset that only could be re-sold to the insurer at a substantial loss for the policy's "cash surrender value." The only alternative available to policyowners who no longer needed or could no longer afford to continue to pay regular premium was to allow their policies to lapse, thereby relieving the life

insurer of its obligation to pay the death benefit. In contrast, when policies are sold on the secondary market, on average, the owner receives four to six times the policy's cash surrender value.

49. On or about July 1, 2008, Wells Fargo Bank, N.A., entered into an Originator's Securities Account Control Agreement (the "Originator Agreement") with Coventry First, a life settlement provider (the "Provider"), which was engaged in the business of originating life settlements for clients, pursuant to which, Wells Fargo Bank, N.A. became securities intermediary for the Provider.

50. On or about July 1, 2008, Wells Fargo entered into an Purchaser's Securities Account Control Agreement (the "Purchaser Agreement") with a financing entity client of the Provider that was desirous of investing in life settlements.

51. Wells Fargo, as securities intermediary for the financing entity took title to the Klugman Policy in August 2010, over three years after the Klugman Policy was issued, when the title of the Klugman Policy was transferred from the Trust to Wells Fargo Bank, N.A., as securities intermediary for the Provider, and then from Wells Fargo Bank, N.A., as securities intermediary for the Provider, to Wells Fargo, as securities intermediary for the client. As part of this process, and pursuant to N.Y. Ins. Law § 7813(c), the Provider gave notice to LBL that the Klugman Policy was the subject of a life settlement. *See* attached Exh. C. The notice that the Provider furnished to LBL specifically stated: "[p]lease be advised that, pursuant § 7813(C) of the New York Life Settlements Act [N.Y. Ins. Law § 7813(c)], we are writing to advise you that the above-referenced policy has become the subject of a life settlement transaction." *Id.*

52. On or about August 24, 2010, in connection with the transfer of title described above, the owner of record of the Klugman Policy was changed from the Trust to Wells Fargo,

16

all previous beneficiary designations under the Klugman Policy were revoked, and the beneficiary designation for the Klugman Policy was changed so that 90% of the Klugman Policy's death benefit was designated to be paid to Wells Fargo, and 10% of the Klugman Policy's death benefit was to be paid to the Trust.

**D.**     **LBL's Refusal To Pay The Death Benefit On The Klugman Policy**

53.     On January 20, 2017, the Insured passed away.

54.     Following the Insured's death, Wells Fargo submitted the Death Claim, and in doing so provided LBL with due proof of the Insured's death as well as all other information LBL indicated it required in order to process the Death Claim. *See* attached Exh. F. In multiple phone conversations over the following weeks, LBL representatives advised that the company was preparing checks to the beneficiaries, even though LBL apparently had no intention of paying the Death Claim. Such statements were false and intended to be misleading.

55.     As of the present date, LBL has yet to pay any portion of the Klugman Policy's death benefit to either of the Plaintiffs, and, in fact has neither formally responded to nor denied the Death Claim.

56.     Following the submission of the Death Claim, LBL filed the New Jersey Action. As set forth above, the Complaint in the New Jersey Action claims that the Klugman Policy should be declared void *ab initio* because it is a so-called STOLI policy, but fails to demonstrate any facts aside from those submitted in connection with the original applications for the Klugman Policy, or the life settlement transaction, to support this extraordinary claim. While the Complaint in the New Jersey Action contends that LBL's appointed agent who originated the Klugman Policy, Lefkowitz, is a known STOLI promoter, as set forth above, this fact has been known by LBL since at least 2012.

17

57. Plaintiffs have each performed all of their duties and obligations under the Klugman Policy, including, but not limited to, making all required premium payments on the Klugman Policy when due.

### AS AND FOR A CAUSE OF ACTION
**(Breach of Contract)**

58. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 57 as if fully set forth herein.

59. The Klugman Policy is a valid and existing contract of life insurance between LBL, the Klugman Policy's insurer, Wells Fargo, the Klugman Policy's sole owner and one of the Klugman Policy's beneficiaries of record, and the Trust, the Klugman Policy's other beneficiary of record.

60. The Klugman Policy, by its terms, provides that: LBL shall make payment of the Klugman Policy's death benefit upon being provided with due proof of the Insured's death; and LBL shall be barred from challenging the validity of the Klugman Policy after the Klugman Policy has been in force during the Insured's lifetime for two years from the applicable issue date of July 27, 2007.

61. Following the death of the Insured, Wells Fargo provided LBL with due proof of the Insured's Death and otherwise provided LBL with all other information it indicated it needed in order to process the Death Claim.

62. As of the present date, LBL has yet to pay any portion of the Klugman Policy's death benefit to the Plaintiffs.

63. LBL commenced the New Jersey Action on or about April 27, 2017, in which it sought, *inter alia,* a declaratory judgment that the Klugman Policy was void *ab initio*.

64. At the time LBL commenced the New Jersey Action, on or about April 27, 2017, the Klugman Policy had been in force during the Insured's lifetime for more than two years from the applicable July 27, 2007 issue date.

65. LBL therefore breached the terms of the Klugman Policy by failing to pay any portion of the Klugman Policy's benefit to the Plaintiffs.

66. LBL further breached the terms of the Klugman Policy by commencing the New Jersey Action because in the New Jersey Action, LBL seeks to challenge the validity of the Klugman Policy, even though the Klugman Policy had been in force during the Insured's lifetime for more than two years from the applicable July 27, 2007 issue date.

67. Plaintiffs have performed all their respective duties and obligations under the Klugman Policy.

68. As a result of the aforementioned breaches by LBL, Plaintiffs have been damaged in a sum to be determined by the trier of fact after trial, which damages include, but are not limited to, $5 million, representing the principal amount of the Klugman Policy's death benefit, plus applicable interest, as well as the fees and costs Plaintiffs have incurred and will continue to incur as a result of LBL's wrongful efforts to challenge the validity of the Klugman Policy and seek the termination of the Klugman Policy.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all issues that may be triable by jury in this action.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment in its favor as follows:

A. Declaring that LBL must pay Plaintiffs the benefits owed under the Klugman Policy;

B. Awarding Plaintiffs compensatory damages in an amount to be determined at trial but not less than $5 million plus interest and punitive damages;

C. In the event LBL is deemed not to be in breach of the Policy, declaring that LBL must refund and return to Plaintiffs all premiums paid on the Policy, plus interest;

D. Awarding Plaintiffs their attorneys' fees, costs and disbursements;

E. Pre- and post-judgment interest as authorized by law;

F. Preliminary and permanent injunctive relief; and

F. Such other and further relief as the Court shall deem just and proper.

Dated: New York, New York
June 6, 2017

ARENT FOX LLP

By: /s/ Julius A. Rousseau, III
Julius A. Rousseau, III
Eric A. Biderman
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
E-mail: rousseau.jule@arentfox.com
biderman.eric@arentfox.com
*Attorneys for Plaintiff Wells Fargo Bank, N.A., as Securities Intermediary*

PANETH & O'MAHONY, PLLC

By: /s/ Michael Paneth
Michael Paneth
2329 Nostrand Avenue
Suite M-300
Brooklyn, New York 11210
Telephone: (718) 274-8888
Facsimile: (718) 372-1115
E-mail: mpaneth@polawyers.com
*Attorneys for Plaintiff Nathan Kahan, as Trustee of The Klugman Trust, Dated May 2, 2007*